IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JONATHAN B. WRIGHT ) | |
| ) | |
| v. ) | No. 1:13-0009 |
| ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:   The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for Child's Insurance Benefits (CIB) under Title II of the Social Security Act, 42 U.S.C. § 402(d). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 16). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff protectively filed his application for CIB on March 15, 2010, alleging disability beginning on January 18, 1996 (Tr. 126-27) due to attention deficit-hyperactivity

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

disorder (ADHD), generalized anxiety disorder (GAD), severe emotional disorder (SED), and oppositional-defiant disorder (ODD). (Tr. 140) The application was denied at the initial and reconsideration stages of agency review, whereupon plaintiff filed a request for *de novo* hearing by an Administrative Law Judge (ALJ). The ALJ hearing was held on October 6, 2011. (Tr. 28-60) Plaintiff appeared with counsel, and testimony was received from plaintiff, his stepfather, and an impartial vocational expert. At the conclusion of the hearing the ALJ took the matter under advisement, until November 8, 2011, when he issued a written decision in which plaintiff was found to be not disabled. (Tr. 12-21) That decision contains the following enumerated findings:

1. Born on January 18, 1992, the claimant had not attained age 22 as of January 18, 1996, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since January 18, 1996, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: Attention deficit hyperactivity disorder, social anxiety disorder, generalized anxiety disorder, avoidant/dependent personality disorder, and obsessive-compulsive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant retains the residual functional capacity to perform a full range of work at all exertional levels. Further, the claimant can understand and remember simple one to two step instructions; find familiar locations and follow simple directions; maintain attention for a simple task for two hours with casual supervision, but not concentrate for extended periods; make only simple plans and goals. He can perform simple delegated tasks, with routine rest breaks and predictable breaks. The claimant can do well without unreasonable deadlines and routine tasks without a lot of changes. He can

maintain a regular work schedule while compliant with treatment and would function best with his own work area away from distractions. The claimant can handle a low stress job including ordinary work pressures but not excessive demands. Regular contact with the public should be limited. The claimant would work best in an isolated, well-spaced work environment and should avoid contacts with crowds. Contact with peers should be non-intensive. Feedback should be tactful and supportive. Changes in work-shifts should be gradual. Further, the claimant can work around normal/simple hazards if explained verbally, and repeated periodically, and can use public transportation to new locations.

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on January 18, 1992 and was 4 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a high school education (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 18, 1996, through the date of this decision (20 CFR 404.350(a)(5) and 404.1520(g)).

(Tr. 14, 17, 20-21)

On December 14, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence,

3

based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Neither party having endeavored to summarize the underlying facts, the following summary of plaintiff's medical history and the testimonial record is taken from the decision of the ALJ:

> The claimant alleged disability due to limitations imposed by attention deficit hyperactivity disorder (ADHD), social anxiety disorder, generalized anxiety disorder (GAD), avoidant/dependent personality disorder and obsessive-compulsive disorder (OCD). He stated that without medication, he cannot concentrate and is hyperactive. The claimant also alleged difficulties with completing tasks and dealing with frustration. He testified he attended regular classes in high school, but was given special accommodations due to his alleged impairments. The claimant reported that he does household chores such as vacuuming, cleaning the bathroom, washing dishes and mowing the lawn. He also stated he enjoyed acting and participating in color guard at school, but described himself as a loner.
>
> * * *
>
> Approximately thirteen years ago, the claimant was diagnosed with ADHD and prescribed Adderall. He was later prescribed Citalopram by David W. Yancey, APRN. The claimant reported the medications affect his appetite and sleep, but effectively control his symptoms. His parents stated the side effects were not troublesome enough to discontinue taking the medication (Exhibits 3F, 4F, and 7F).
>
> In March of 2006, the claimant was examined by Alicia Lankford, Ed.S, the school psychologist for Hickman County Schools in Tennessee. After a series of cognitive tests, she found the claimant met the state eligibility criteria for a student with a learning disability in the area of reading comprehension (Exhibit 2F).
>
> At the request of the Tennessee Department of Human Services, Division of Rehabilitation Services, Elliot Ward, Ph.D., examined the claimant on December 22, 2009. The claimant obtained a Full Scale IQ score of 84, which

> is within the low average range. His Verbal Comprehension Index was within borderline range while his Working Memory Index and Processing Speed Index were within the low average range. Dr. Ward noted the claimant had difficulties interacting socially, which he deemed likely related to social anxiety and very limited self-confidence. He also found the claimant to be worried about the future and concerned about immediate family members. Dr. Ward diagnosed the claimant with ADHD, social anxiety disorder, GAD and an avoidant and dependent personality disorder, not otherwise specified, and recommended individual counseling (Exhibit 4F).
>
> The claimant did not pursue individual counseling until July 19, 2010 when he went to Centerstone Community Mental Health (Centerstone). Nancy Barber, an advanced practice registered nurse, under the supervision of Sandya Gunasekera, M.D., initially assessed the claimant. Ms. Barber noted the claimant's compulsive behaviors, anxiety and his lack of concentration and social interactions. Based on her findings, Ms. Barber diagnosed the claimant with ADHD, GAD and OCD (Exhibit 7F). After this initial evaluation, the claimant did not return to Centerstone (Exhibit 9F at 2).

A Gloal Assessment of Functioning (GAF) scale of 45 was set forth by Nurse Barker on July19, 2010. However, Ms. Barber only saw the claimant once, as he did not return to Centerstone after the initial assessment. Nor was any testing done at Centerstone to validate the reported symptoms. . . .

> ... [Plaintiff's stepfather, Mr. Robert Arthur Dewitt] testified that the claimant has anxiety disorders that result in chest pains and emotional outbursts. He stated the claimant has to do routine tasks, such as dressing, in a certain order. Mr. Dewitt said the claimant is easily distracted, has problems making decisions and must be reminded numerous times to complete simple tasks (Exhibit 8E).

(Tr. 17-19)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

#### B. Proceedings at the Administrative Level

Plaintiff's application for CIB is made pursuant to 42 U.S.C. § 402(d), which, as pertinent here, provides that "[e]very child ... of an individual entitled to old-age or disability insurance benefits ..., if such child– (A) has filed application for child's insurance benefits, [and] (B) at the time such application was filed was unmarried and ... is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22" shall be entitled to a monthly child's insurance benefit. See also 20 C.F.R. § 404.350. Accordingly, the disability determination in this case is made under the same standard as is used for adult applicants for disability insurance benefits. Under this familiar standard, the claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

6

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See

Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

## C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in his determination of plaintiff's credibility, due to his failure to consider certain findings within the report of Dr. Elliott Ward, Ph.D., which would lend support to plaintiff's subjective report of limitations. Moreover, plaintiff argues that an accurate accounting of his school records would support his credibility as a disability claimant, rather than detract from it as determined by the ALJ. As to the report of Dr. Ward, plaintiff points out that the tests which Dr. Ward administered in order to evaluate plaintiff's "attention management" abilities yielded results which were several standard deviations below the appropriate, predicted performance levels, justifying

8

his placement in the "impaired range" with a "neurocognitive/attention impairment." (Tr. 303-04) Despite these test results, the ALJ found that Dr. Ward's report, analyzed for purposes of assessing plaintiff's functioning within the broad categories of functioning addressed in the mental health listings, undermined plaintiff's subjective complaints of disabling limitations; the ALJ made particular note of Dr. Ward's observation of only mild difficulties with focus, understanding of directions, communication, and social skills during the interview and testing process. (Tr. 15)

The undersigned finds no error in the ALJ's consideration of Dr. Ward's report. Despite the test results indicating impaired attention management ability, Dr. Ward himself did not appear to view these results as anything more significant than confirmation of plaintiff's ADHD. (Tr. 304) ("Direct attention measurement supports the conclusion that he has primary difficulties with his attention management and this is consistent with the diagnosis of ADHD.") Dr. Ward's conclusions were much more focused on plaintiff's demonstrated deficits with regard to social functioning, with respect to which his deficits in attention management were viewed as nothing more than peripheral:

> The primary issues addressed include his difficulty with social interaction and this is likely related to both social anxiety as well as very limited self confidence. He does not have friends but in addition does not engage in recreational activities or productive activities at home. His step-father rates him as very low on the [practical life skills test]. *The ADHD is generally controlled with medication and this is not a primary explanation for his lack of social activity or motivational factors.* ... I would recommend individual counseling for Jonathan to address his dependency, motivational factors, social limitation and lack of confidence.

(Tr. 308) (emphasis added). In addition to Dr. Ward's reference to plaintiff's attention

9

management issues being controlled by his ADHD medication, the ALJ took note of plaintiff's own admission that his focus and concentration improve when he is taking his medication. (Tr. 19, 31; see also Tr. 46 (testimony of stepfather that "[t]he medication he's on allows him to concentrate and focus his attention. For example without the medicine he has a great deal of trouble reading anything. With the medicine he can read 10 pages, 15 pages, 20 pages in an hour and sort of remember most of what he's read.")) Thus, plaintiff's performance on the attention tests administered by Dr. Ward were appropriately not viewed as critical to his overall assessment of plaintiff's functional limitations. Consequently, the ALJ did not err in failing to give explicit consideration to those test results when determining the extent to which Dr. Ward's opinion supported or undermined the credibility of plaintiff's subjective complaints.[2]

Plaintiff next argues that the ALJ erred in discounting the credibility of his and his stepfathers' testimony due to its inconsistency with his performance in school. Specifically, the ALJ found that, "despite allegations of severe limitations in understanding and focus, he graduated high school on time and obtained a grade point average of 3.0 his senior year. The claimant's performance in school undermines the current allegations of severity." (Tr. 19) Plaintiff responds to this finding by pointing out that the ALJ appears to have not recognized the extent to which his learning disabilities were accommodated in high school, citing the evidence of his special education under an individualized education program (IEP) (Tr. 159, 169) and the remarks of his U.S. History teacher, Ms. Robin

---

[2]It bears noting that the ALJ ultimately found plaintiff credible on this subject to the extent that he was determined to be capable of "maintain[ing] attention for a simple task for two hours with casual supervision, but not concentrat[ing] for extended periods[.]" (Tr. 17)

10

Castleberry, who stated as follows:

> Jon needs extra help in almost all academic areas of my class. He has severe learning difficulties. Without abbreviated assignments, extended time, and other special education services, he wouldn't be able to pass any class, much less US History.

(Tr. 223)

Assuming *arguendo* that the ALJ erred in partially discounting plaintiff's credibility by reference to his performance in school, the undersigned finds that any such error is harmless in light of the reliance also placed on plaintiff's daily activities and the medical record to justify the credibility finding in this case, and furthermore in light of the ALJ's residual functional capacity finding (Tr. 17), which credits plaintiff's alleged limitations to the extent that he is limited to only the simplest, most isolated, and lowest-stress work. Plaintiff and his stepfather testified that, with the benefit of repetitively performing the task, he could reliably accomplish such activities as caring for pets, washing dishes, and even mowing the lawn. (Tr. 19, 32-33, 48) Neither Dr. Ward nor Dr. Breslin (the nonexamining psychological consultant whose functional capacity assessment (Tr. 316) was adopted by the ALJ) indicated that any symptoms for which plaintiff received accommodation in school could not also be accommodated in the workplace. While plaintiff's academic performance is certainly relevant to the determination of whether, pursuant to 20 C.F.R. § 404.350(a)(5), any disability began before he reached age 22, he must first establish that he has been disabled *from work* during some period since attaining the age of 18. Regardless of the extent of accommodation plaintiff required in the classroom to achieve a 3.0 GPA and graduate on time from high school, the undersigned finds substantial evidentiary support for

11

the ALJ's finding that he retained the mental ability to perform extremely simple, repetitive tasks in a low stress, isolated environment.

Finally, plaintiff argues that the ALJ erred in rejecting the report of Ms. Linda Owens, certifying plaintiff eligible for vocational rehabilitation services provided by the Tennessee Department of Human Services based on his "mental disability." (Tr. 163-64) However, this report of eligibility for state services relies exclusively on the test scores and limitations assessed by Dr. Ward (for which purpose that assessment was solicited), discussed at length above. The ALJ did not reject this evidence out of hand because Ms. Owens is not an acceptable medical source, but rightly noted that eligibility for state services does not align with the determination of disability under the federal Social Security Act, and in accord with the above discussion of Dr. Ward's assessment, appropriately gave Ms. Owens' report little weight to the extent that it classified plaintiff as unable to perform work without first receiving rehabilitation services. (Tr. 15) Social Security Ruling 06-03p does not require more, nor does the undersigned otherwise find error here.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections

filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 10th day of August, 2015.

    <u>s/ John S. Bryant</u>
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE